Turney, J.,
delivered the opinion of the Court.
The husband may, after marriage, not being indebted at the time to an amount sufficient to have-the effect of delaying and defeating his creditors, make-a voluntary deed of settlement of property to his wife. If, at the time of such settlement, he intends thereby to discharge what he conceives to .be a debt due to-the wife, and erroneously supposes himself bound by an agreement between himself and wife, that she is to. have to her sole use the acquisitions of her own labor, and that she could in a court of equity compel him to make the conveyance, fraud or undue influence not intervening, the conveyance is nevertheless good andi binding upon the husband, and against his subsequent-creditors.
*647 In Smith v. Green, 3 Hum., 118, the Court say r “ The husband may, after marriage, settle his own property upon his wife, by the intervention of a trustee, if not indebted at the time of making the settlement.
“ The statute 13th Elizabeth does not declare voluntary settlements void against creditors, but merely declares that a fraudulent deed shall be void against them. If a man be indebted at the time of making a voluntary deed of settlement, it does not follow that it is void for that reason alone, it is only a presumption of fraud.
“To invalidate a postnuptial settlement, the husband must not' only be indebted, but he must be indebted at the time to an amount sufficient to have the effect, of delaying and defeating creditors.
“ In the case of Lusk v. Williams, reported in 5 Vesey, the husband, at the time of making the settlement, was indebted in two sums secured by mortgage and £100 besides.
“ This settlement was attempted to be impeached by a subsequent creditor, upon the ground of its being-voluntary, and therefore void against creditors. The bill charged that he was indebted to several persons and insolvent. Lord Alvanly decided that in order for a subsequent creditor to obtain a reference for-enquiring into prior debts for the purpose of invalidating a voluntary settlement, proof should be made Of antecedent debt; and he further .observed, in Stephens v. Allen, that Lord Kenyon seemed to think, that without an antecedent debt proved, there was *648 no such right, and the creditor’s bill was dismissed.’ From these adjudications, it is manifest that any post-nuptial settlement out of the husband’s estate, is not void against subsequent creditors, but only such as was made when the husband was indebted at the time to a considerable amount so as to raise the presumption of fraud; and inasmuch as the subsequent creditor can only effect a voluntary settlement, through the medium of debts owing by the debtor at the time said deed was made, it becomes indispensable to show the existence of prior debts at the date of the settlement, to -enable the creditor to invalidate the deed.”
Recognizing the principles announced in that opinion, with the modification, now become a fixed rule, that the intervention of a trustee is not necessary, and applying them to the facts of this case, the inquiry is, Was the husband indebted at the time of the execution of the deed in an amount sufficient to have the effect of delaying and defeating creditors, or to an amount so considerable as to raise the presumption of fraud?
The first proof relied upon by complainants to establish the result, is the statements in the answer of Capps, “ that at the time of the conveyance he was on his individual account indebted in- an amount not exceeding seven hundred dollars, ($700).” In connection with which we must consider the extended statement, “this respondent had ample property of his own to pay his individual debts.” And that “not long before said conveyance he requested • his co-defendant, Mr. Bettis, to inform him of the condition of said firm, and was *649 told by him, that the assets of the firm, deemed perfectly available, amounted to about thirty-three thousand, one hundred and sixty dollars, ($33,160), and the debts to about twenty-one thousand dollars, ($21,000),"
The answer of the wife is to the same effect, with the qualification that she derived the information from her .husband. These answers are under oath in response to the prayer of the bill, “that they be compelled on oath to answer the same and each and every allegation thereof,” &c.
The bill being for discovery, the answers, so far as they are responsive both as to confession and in avoidance, must be treated as evidence, and will prevail unless overturned by other proof; and there is nothing in the record negativing “ample property of Capps to pay his individual debts,” nor the solvency of the firm by more than twelve thousand dollars. It is shown that various creditors between the 15th of October, 1860, and March the 12th, 1861, obtained judgments against Bettis & Capps for amounts aggregating about the sum of thirty-seven hundred dollars, ($3,700), the earliest being about fifteen months after the conveyance to the wife on the 28th of June, 1859.
The note to White & Co. was executed on February the 9th, 1860, about seven months after the registration of the deed on the 2nd of July, 1859, arid in extinguishment of an account commencing in April, 1859, and continuing till the 20th of December, 1859, of which there were due the 30th of July, 1859, eighteen dollars: — the account credited, August, 1859, by $113.30: in September, 1859, by $257.87; merchandize returned, *650 $10.96; leaving balance for which the note was given; so that we have, not only all this account, except eighteen dollars, contracted after the registration of the deed, but several transactions of credit and confidence between the parties, besides the making and acceptance of the note: the account of $126.72 is subsequent to the date of the note.
Of the Fisher, Amis & Co. account, only $23.55 were before the 30th of August, 1859; this is one item of March the 12th, 1859. These facts tend strongly to show the individual and co-partnership solvency of Capps and Bettis & Capps.
The creditors are conclusively presumed to have had notice of the conveyance by the registration, and afterwards to have credited Bettis & Capps, not upon the faith, at all, of the property conveyed, but upon the faith of their honesty, or of the individual or firm ability to pay from other sources.
Their conduct is to be regarded as evidence, conducing to show, that the husband, at the time of the execution of the deed, was not indebted in an amount sufficient to have the effect of delaying and defeating creditors, nor to an amount so considerable as to raise the presumption of fraud.
It would be a strained presumption to conclude that the judgments referred to and relied upon as indebtedness prior to the conveyance, were for sums contracted to be paid from fifteen to twenty months before the judgments were obtained. There is nothing showing the nature of the debts, the dates of their creation or maturity, nor the circumstances under which *651 the judgments were rendered. The burden of explanation was upon the complainants, who have failed- to-give it. While fraud may, as any other fact, be shown by circumstances; the circumstances must be connected and consistent, not supplied by intendment or disjointed presumptions of the existence of several essential requisites from an isolated fact.
Fraud being criminal in character, requires fuller-proof to give preponderance to its existence than other-facts of the ordinary transactions of men: the party charging it must show everything in its proper relation, necessary to its establishment: — not necessarily by positive proof, — this can be seldom done, — but by- facts- or circumstances, coherent and convincing in their-nature.
The circuitous conveyances from Capps, to the uncle-reciting a money consideration, and from the uncle to-the niece and wife reciting the consideration of love, are not of themselves badges of fraud.
This may be explained in the fact that the law,, until a comparatively recent period, required the intervention of a trustee in settlements by the husband upon the wife; and that the parties in this instance supposing, as they might have done, that such was still the law, adopted this method for certainty and safety.
It is positively right, founded in the instinctive-conviction of all right-minded men, that the future-comfort and support of the wife and minor children shall be provided for; the law favors and encourages it; and when a settlement made for such purpose is- *652 ^attacked for fraud, tbe fraud must be made to appear by clear and satisfactory evidence; which has not been •done in this case.
Affirm the decree.